Good morning, everyone. On behalf of the 4th District Appellate Court, we thank Dean Smith, the administration, the faculty, and of course the students for providing us the opportunity to do orals here in Champaign. We appreciate doing it on an annual basis and sincerely thank you for your hospitality. Thank you to the parties and counsel for accommodating. Thank you. First case, Reeves v. Ramp, 4100443. Counsel for the appellant, please. Thank you. May it please the court, counsel, ladies and gentlemen, my name is Dawn Wall and I represent Brad Ramp, who is the appellant in this case. We are here before your honors on an interlocutory appeal that we filed pursuant to Illinois Supreme Court Rule 307. By way of background, the plaintiff in this particular case, Barry Reeves, operated Reeves and Seed Chemical Company. In January, he filed a verified complaint in McLean County and also filed a request for a temporary injunction. That proceeding went to hearing on February 3rd before Judge Robb. On that basis, she conducted a non-evidentiary proceeding. She looked at the allegations of the verified complaint and also the affidavit of Mr. Reeves that was filed in conjunction with the motion for a preliminary injunction. She also reviewed what I would call a non-disclosure agreement. It's a two-page document that's referenced in each party's brief. It was actually included in the trial court record, but by some error was not included in the appellate record. Your honors do have copies of that non-disclosure agreement in the appendix to my brief and also in the appendix to Mr. Patterson's brief. That two-page non-disclosure agreement is really what brought the parties to the McLean County trial court on the motion for temporary injunction. In response to the motion for the temporary injunction, Mr. Ramp filed an affidavit. In addition, we filed two affidavits from independent persons. One was a George Holzapple. The other was an Eric Funk. Both of those individuals were farmers in the McLean County area. They, in their affidavits, set forth how they became affiliated with Mr. Ramp after he left Reeves Chemical Company. After considering those affidavits and considering the arguments of counsel, Judge Robb determined that the customer list of Mr. Reeves, as well as the information about the customers that Mr. Ramp had been exposed to during the course of the time he worked for Mr. Reeves, was in fact confidential information. During the course of that proceeding on February 3rd, after the granting of that injunction, I essentially indicated to the trial court I wasn't certain going forward how Mr. Ramp was able to conduct himself as a business person in the McLean County area because essentially we had no specific directives from the trial court as to what equaled confidential information. I had certainly argued, based on this court's Springfield Coin case, that a customer list, standing alone, or information about the customer's was not confidential information as determined by this court in Springfield Coin. And in the Springfield Coin case, my assertion is that this court took a look at, as a precursor, as a preliminary consideration to the legitimate business interest test, what constitutes confidential information in the state of Illinois. I would assert to your honors that that is the consideration that the trial court erred in making at the February 3rd hearing and also the trial court erred in considering in denying our motion to dissolve the injunction, which was heard by Judge Drzeski on May 14th. I would assert to your honors that the basis of our appeal goes to the granting of the temporary injunction and the failure of the trial court to dissolve that injunction in the subsequent hearing on May 14th. The confidential information determination, I would assert to your the type of information that came into the hands of my client, Brad Ramp, over the course of the two years that he worked for Reeves. Mr. Ramp was an agricultural student at ISU. He owned his own agricultural business prior to affiliating with Mr. Reeves. He had an application business. He had an applicator's license. He was raised on a farm. He had a wealth of knowledge in his head before he even walked through the door at Reeves and Seed Chemical Company. After a period of time, after Mr. Ramp served as a laborer for Mr. Reeves, Mr. Reeves kind of developed him toward a sales end and said, you're now going to be a salesman for me. I want you to sign this non-disclosure agreement. And I would ask your honors to look at the verbiage of that non-disclosure agreement and then also look at the interaction between Ramp and Reeves that developed over the course of their relationship. I think it's extremely similar to the relationship between the middle man who worked for the Springfield Coin Gallery and the business owner in that instance. And this court said, before you even got to the analysis of applying the legitimate business interest test and determining whether or not a restrictive covenant was enforceable in Illinois, this court first looked at, is this the kind of information that we're going to be in the business of protecting? So I think foremost we have to determine, is the information that the trial court in McLean County has now precluded Mr. Ramp from utilizing the kind of information that the appellate court is going to say is protectable information within the state of Illinois? Even aside from the terms of the coin, are we going to place a protectable veil over customer lists and customer information that is available to the general public in the public domain? I would assert to your honors that this is a farm community, an agricultural community, and that I as a litigator, if I have a or spider mite damage, I might go to the extension office of the University of Illinois or the Farm Bureau in McLean County, find out who the local farmers are, the nature of the soil that they have on their farm ground, the type of seed that they plant, the yields that they obtain, all of that information is available in the public domain to me as a layperson. And it has to be that way because of the federal crop programs that require farmers to make that information public. So I would assert to your honors that who the farmers are in and around McLean County, where they farm, what plots of farm ground they farm, what types of seeds they plant on their farm, is all public information. And certainly under the principle articulated in Springfield Coin, that information would not be protectable. So we don't even have to get to whether or not a restrictive covenant is enforceable because at the front end we're not going to give some special protection to that kind of information. Counsel at the trial court and in fact Judge Drzeski both determined that the court's decision in Springfield Coin, I would assert that certainly with respect to this court's application of the legitimate business interest analysis, that is no longer the proper analysis to apply by a court to a restrictive covenant in an employment agreement since Mahanti and the illumination that now in Illinois we use time and territory and the reasonableness of that to determine whether or not a restrictive covenant in an employment agreement is going to be valid and enforceable in the state of Illinois. But I would assert to your honors that the fact that Sunbelt Rentals shows the time and territory reasonableness analysis over the legitimate business interest test does not preclude this court from or any court in Illinois from going forward and applying the principles and considerations that this court articulated in Springfield Coin in determining what are we going to protect in the state of Illinois. I would assert that the office mate case that was cited by this court in Springfield Coin is a clear example that that particular principle had merit even before it was joined together with a consideration of the legitimate business interest test. That the principles articulated in office mate I think very closely also align with the facts here. In that particular situation it was a salesman for an office store and the appellate court said we are going to examine the day-to-day relationship between the salesperson and this office store, the customers that this salesperson encountered, and the manner in which office mates generated and ran their business. And the court in office mate which was cited by this court in Springfield Coin said we're not going to protect information that this salesperson learns in the course of their affiliation with their employer. The office mate case said that there are certain things that people learn in experience. They learn certain particulars about how to interact with customers, how to be sales people, and the principle that office mates articulated was let's examine it. Is it a professional service situation or is it a sales service situation? If it's sales we're not going to protect that information that is learned in the course of the sales. Here Mr. Reeves is the one who as a salesman. Mr. Reeves is the one who said it was strictly sales. I would assert to your honors that even if we don't look at the non-disclosure agreement, Mr. Reeves is not able to protect the information, the customer information or the customer list information he is seeking to protect because Mr. Ramp learned that in the course of being a salesman and under office mate or under customer list. The agreement your honor says confidential information includes customer list. How do you get around that? I think that the exceptions that are articulated in the non-disclosure agreement specifically carve out customer lists in this instance. There are eight exceptions listed in the four corners of that non-disclosure agreement and the first two essentially say we're not going to protect confidential information if it's available in the public domain, if it was generally known by others in the industry. So I would assert to your honor that yes the definition of confidential information as these two parties contracted includes a multitude of things including it specifically says customer list. But if you go on to those exceptions and there are eight of them, I would assert that in this instance the trial court went way out of the four corners of that agreement by construing confidential information to include a customer list or information that belonged to the customer when those very specific exceptions were contracted for and were negotiated between the parties. So in this instance when Mr. Ramp signed this agreement in 2007, I believe that he from the writings of that document which was created by the plaintiff in this case understood that if there are very particular ideas or Mr. Reeves himself develops, that's something that's going to be out of bounds for me when I leave his employee. But if you read through these very specific exceptions, I'm certain that anybody who read that back at the time understood that any information he had in his head before he walked through the door and his general experience as a salesperson or any information that he could learn after he left by doing some independent study or independent assessment of the information in the public domain, he felt was free game. And I think pursuant to the written agreement, the non-disclosure agreement, he was able to do that. I think it's extremely important in analyzing this case against Sunbelt Rental or against the other Supreme Court cases preceding Mahanti that here we don't have a non-solicitation agreement. We don't have a non-compete agreement in this case. So Mr. Ramp never signed up that he wasn't going to compete against Mr. Reeves. Mr. Ramp never signed up that he wasn't going to try and solicit other individuals. The only thing Mr. Ramp gave up in signing this particular non-disclosure agreement was using Mr. Reeves' confidential information that was not available and discoverable to others when he left that business and moved on to continue his own business. This agreement is reflective that Mr. Reeves knew that both of these gentlemen had independent businesses when they first associated together. And Mr. Reeves understood that they, at some point, might be pulling their association apart again. And the only thing that he structured in this agreement to protect was the While Mr. Ramp worked for Mr. Reeves. With respect to further analysis, even beyond the Springfield Coin and the Office Maids case, if this court decides that your decision in Sunbelt voids that particular test that was articulated about how we determine confidential information, I would assert to your honors, as I mentioned in my brief, that we have a statutory vehicle in place in the state of Illinois that assists courts on a regular basis with determining exactly what is a trade secret. And many, many of the cases that develop under the Illinois Trade Secrets Act have to look at similar definitions of confidential information, like the one that is contained in the non-disclosure agreement here. And the courts have said, regardless of the definition in the agreement, we want to look at how the parties managed their relationship when they were working together day-to-day. So the trade secret statute sets out actually a two-pronged consideration. Did you make this argument to the trial court? I did mention the trade secret protections, your honor. We did not cite to the specific trade secret statute, but I utilized the prongs or the principles that are contained within the trade secret statute. And I can only say that if I would have had more than a 36-hour window to prepare our defense... Counsel, just so you know, you have two minutes left. Thank you. It's a little difficult without the lights, so I appreciate that. We'll keep you posted. Thank you. So with respect to what did we include when we sought relief at the trial court level to oppose this injunction, I did not specifically come in hand with the trade secret statute, but I did articulate the same defenses to Judge Robb and again to Judge Drzeski because there's an entire body of case law in our state that is tied to that statutory provision that says, you know, if it's out in the public domain, if it is discoverable by competitors, if actually you have individuals who deal with more than just one business, and I would assert that farmers deal with all kinds of seed people or all kinds of seed dealers. If I'm a farmer in central Illinois, I might buy my seed corn from one particular dealer. I might buy my soybeans or my field corn from a different dealer. This is the type of information that under the trade secret principles that have become statutory by virtue of common law that has developed over time, that in fact those things are not protected, would not be protected under the trade secret statute, would not be protected under the principles articulated in Springfield Coin and OfficeMate, and should not be protected by the plain language of the four corners of the nondisclosure agreement. I would assert to that relief. Thank you. Thank you, counsel. Counsel for the appellee, please. If it may please the court, counsel, our audience, Clayton Patterson on behalf of the plaintiff appellee, Barry Reeves, doing business as Reeves Seed and Chemical. There are two issues that I wanted to touch base on counsel's argument regarding the Illinois Trade Secrets Act. Counsel is correct that she did not specifically reference that act at the hearing, but let's distinguish what hearing we're talking about. The Illinois Trade Secrets Act did not come up at the May 14th hearing related to the motion to dissolve. She did reference some of the principles as she It's my client's opinion that the reference to and the reliance on the Trade Secrets Act is a red herring. There is a distinction between the rights provided to an employer under the Trade Secrets Act and the rights that an employer can secure for himself through a contractual agreement with an employee. Under the Trade Secrets Act, an employer only has a right in its trade secrets as that term is defined under the act. Notably, the arguments employed by this Court in Springfield case as to the confidentiality prong of the legitimate business interest test track the analysis of whether something is a trade secret under the act, and that is specifically stated at page 575 of the office mates case, which is heavily relied on by this Court in Springfield case. By using a restrictive covenant agreement, an employer can protect confidential information, for example, a customer list or any other information that may not qualify as a trade secret under the act. There is a preference in this state as indicated by the Supreme Court to allow parties to freely contract. In this case, the parties agreed on what the definition of confidential information is. That definition included, amongst other items, financial information, procurement requirements, customer lists, and business and contractual relationships. As Justice Steigman noted in his opinion in the Sunbelt case, if the appellant objected this definition, the appellant had two options. First, he could have negotiated a different definition of confidential information, or two, he could have refused to sign the agreement. However, doing neither, the appellant is now obligated to the burdens of the contract, maintaining and not disclosing the confidential information or using the confidential information. Now I'd like to go into the original two arguments I had planned. The first of those two issues would be, with respect to the issues presented on appeal, of those issues, which of those does this court have jurisdiction under Rule 307A? 307A provides that a party may pursue an interlocutory appeal from an order granting, denying, dissolving, modifying, or refusing to dissolve or modify an injunction. In order to perfect that appeal, the party must file a notice of appeal within 30 days. If the notice of appeal is filed within 30 days, then the appeal will be timely. With respect to the timeliness issue, this court has held in trophy time that the filing of a motion subsequent to an order that is subject to an interlocutory appeal will not toll the 30-day timeframe for pursuing that notice of appeal. With respect to the scope of what may be appealed, this court in Panduit as well as, I'm sorry, not this court, the appellate court in Panduit, as well as the appellate court in Stoler, basically stated that when a party appeals the denial of a motion to dissolve an injunction, that appeal does not open up the door to all other orders previously issued by the trial court. And specifically, as is stated in the Stoler case, that party will be limited and confined on appeal to addressing those issues presented in the motion to dissolve. In the instant case, the appellate filed the notice of appeal on June 14, 2010. That notice of appeal sought the reversal of the February 9th order, which granted the preliminary injunction, which was issued by Judge Robb. The notice of appeal also sought the reversal of the May 14th order denying the motion to dissolve the injunction. That order was entered by Judge Jadrzewski. With respect to the February 9th order, under 307A and the trial time decision, the notice of appeal was not timely. It was over 90 days late. So this court would not have jurisdiction as to any issues that the appellant has now raised with respect to that February 9th order. As such, the court should not consider that portion of the appeal. With respect to the May 14th order, the appeal was timely under the June 14th notice of appeal. However, as I previously pointed out, just because that appeal was timely of the May 14th order, that does not open up the door to other issues that were not presented in the motion to dissolve. This is where the appellant's appeal becomes confused. If you look at section one of appellant's brief, appellant is seeking the reversal of the February 9th order. However, the argument presented therein is the argument that was raised in the motion to dissolve, namely the applicability of the confidentiality prong of the legitimate business interest test. If the court looks at section two of appellant's brief, appellant is seeking reversal of the May 14th order denying the motion to dissolve. Section two is seeking reversal of the May 14th order. However, in this section, appellant has presented an argument that was not raised in the motion to dissolve, namely whether the agreement is enforceable due to an indefinite territory restriction. Notably, that issue wasn't even raised by the in the trial due to an indefinite territory restriction. Trying to bring clarity to this appeal, I would suggest to the court that the court interprets section one of appellant's brief is actually seeking reversal of the May 14th order as opposed to the February 9th order. That way, the relief being sought would line up with the arguments actually presented to the trial court. I would further suggest to the court that section two of appellant's brief be dismissed as it relates to the February 9th order as being untimely, or moreover, as it addresses issues that were not raised in the motion to dissolve. It's appellee's position that this court may only consider the applicability of the confidentiality prong of the legitimate business interest test. The court should dismiss the appeal as to all other issues. Well, let me ask you this question. What exactly, what information possessed by the appellant do you believe is confidential? I believe the identity, the customer's procurement requirements, the customer's needs that are developed over many years is set forth in the verified complaint. The knowledge regarding the solutions for those specific needs, vendor agreements, the terms of those agreements, as I indicated in my complaint, immediately upon the appellant leaving the employee of the appellee, he opened a competing business, secured a vendor agreement with the same vendor that my client had, and somehow managed to secure identical customers. Well, if he went to the same wholesaler, how is that protected by the confidentiality agreement? He can go to the same wholesaler, but what I think he did is took our information, our agreement with our vendor agreement, and the terms therein that were negotiated, and then used that as a basis to try to negotiate his own agreement, using the confidential information for a benefit that wasn't for my client. So, is that something that shows he actually did that, or is that something you just assume? That is something that has been alleged as the verified complaint supported by an affidavit. At this point, at that point, the trial court wasn't looking at determining issues of fact, whether sufficient evidence had been raised to warrant the issuance of a preliminary injunction. With regard to the agricultural customers who are serviced by both vendors now, is any of that information, base information about name, soil type, crop type, available in the public domain? I don't believe it is. It's certainly not in the capacity that my client had it, where it was all in one place. You cannot go to a phone book and find a complete list of my client's customers. Moreover, you can't go to the phone book and find J&A Farms, or find that it is an Illinois partnership with three limited liability companies as its partners, or that it farms 4,500 acres, or that it's controlled by Eric Funk and Don Wheatley. You're not going to find that in the phone book, or the public record. Could you use the public record information to determine that? I don't believe so. I don't think you could develop the whole complete picture that my client had that was developed over many, many years. The problem I'm having with the contract that your client drafted is that it seems to leave a lot of holes in it, by the exceptions to the definition of confidential information. Usually we see non-compete agreements with situations where it's, you know, if you leave our employ, you can't work in this industry for a period of X number of years within a radius of X number of miles. And that's the Sunbelt case, basically, right? But this doesn't really say that. This agreement doesn't really say that. It accepts out so many things that in the nature of this business, you can go out and compete and have base information, whether you already know it because you work there or you can find it somewhere else, that the agreement may not apply. Well, with respect to the base information, I direct the court to the tower oil and technology case. It wasn't cited for this principle in my brief, but it was cited therein. And that case basically said that you can, through a confidentiality agreement, the parties can agree to include what would be base knowledge. And that base knowledge would not be protected under the Illinois Trade Secrets Act, but we haven't brought a cause of action for that. And I don't necessarily disagree with that, but here's the exceptions. It was in the public domain at the time. It was communicated to the recipient by the other party. Your client said, these three farmers are my customers. I know who they are, their soil type, their needs, so on and so forth. But you can go to the governmental offices, the extension office, and with independent work, find out the same thing. Or it is entered, the information entered the public domain subsequent to the time it was communicated to the recipient by the other party through no fault of the recipient. That's not quite applicable, but still, if you can find the information in the public domain, how can you prevent that information being used? If you take a piecemeal approach to everything that's included under the definition of confidential information, a specific name, I could find any name as part of the public record. Look at the Social Security records. However, we're not saying it's a piecemeal approach. Collectively, all of the information I have regarding my client or my client's information that he has regarding his customers, where they farm, what they're looking to accomplish with their farming, what their yield goals are, what their soil needs are, what their chemical needs are, what their seed needs are, you're not going to find that collectively in the public record. Well, my point is, Mr. Ramp didn't write this agreement. He did not. Mr. Reeves did. So, I mean, if he left holes, it kind of works against him, doesn't it? I would argue that Appellant hasn't made the argument that the agreement should be interpreted against the drafter. And that issue has been waived by not presenting it. All right. Go on. Okay. Moving on to the second issue, whether this court should reaffirm its holding in Sunbelt Rentals and rejecting the legitimate business interest test and adopting the time and territory test. During Appellant's argument, she indicated that what I would say is that let's take a step back. A legitimate business interest exists, one, if an employer has a near-permanent relationship with his clients, or two, if the employee gained confidential information through his employment and used that for his own benefit. For purposes of this appeal, the only issue is the confidentiality prong of legitimate business interest test. Counsel indicated that it was not a precursor to the test. That simply makes no sense at all. The confidentiality analysis is one prong of the test. And that analysis she set forth from what was stated by this court in Springfield and what was stated in OfficeMate's case, that all relates to the confidentiality prong of the test. That test was unequivocally rejected by this court in Sunbelt. And when this court rejected the legitimate business interest test, it followed a unanimous court, accepted the opinion authored by Justice Steigman, whereby he traced the history of the legitimate business interest test, noting that it first started in the first district in Nationwide Services v. Kohler, and then it subsequently been cited and utilized by all of the appellate courts in Illinois in deciding restrictive covenant cases. However, in 2007, in the Lifetech case, this court struck the first blow against concurrence where Justice Steigman argued that the test had never been valid and had never been the law of Illinois and instead had simply been created out of whole cloth by the appellate courts. In challenging the court or the test, Justice Steigman traced the history through the Illinois Supreme Court decisions and noted that the lesson to be learned was courts at any level, when confronted with the enforcement of a restrictive covenant, should evaluate, and this is a key word, only the time and territory restrictions therein. If the court determines that they are not unreasonable, then the agreement should be enforced. What's the territory restriction here? And here, there is an unlimited territory restriction. Is that reasonable? And with respect to confidentiality... I mean, if Ms. Wall's client moved to South Dakota, I mean, you're suggesting that that would be included in the territory restriction? Let me answer the question, then I'll give you my support for it. If he moved to South Dakota, if he moved to any state, he could still try to use that confidential information to secure my client's customers in McLean County. It doesn't matter where he's located. As I note on pages 17 and 18 of my brief, where I cite numerous opinions, including Wolf, the Tower Oil, the Cody v. Harpo, the appellate courts have held that a territory limitation in a confidentiality agreement would serve no purpose and would prove useless. Now, confidentiality agreements can certainly have a territory limitation, but it is not a requirement for their enforceability. And I would note that specific issue was never raised in the motion to dissolve and was never raised at the hearing on the preliminary injunction. So arguably, it's not even properly before this court and that issue... So you're saying opposing counsel did not argue the territorial restriction test at the trial level? Yes, that is what I'm arguing. Okay. Now, assuming this court addresses the actual substance of the time and territory restraints in the agreement, the court must look at whether the enforcement would be injurious to the public or create an undue hardship on the promisor or is greater than necessary to protect the promisee. As I just mentioned, appellate never addressed any of those issues at the February 9th hearing or the May 14th hearing. But my client at those hearings, we did address and argue that the agreement does not limit the appellant's future career options. He can still be a sales representative in the industry. It doesn't limit the locale where he may choose to work or the timeframe where he may choose to start. He can start a competing business. He can base that business in McLean County. And it also doesn't... The agreement doesn't unduly restrain the public's ability to secure similar goods and services. What the agreement does do is limit his ability to disclose or use the confidential information that he learned while employed. He agreed to the terms of the definition of confidential information. And he should be held to the burden of that agreement. And I would posit to the court that if the court decides that it continues to apply the time and territory test without regard to the confidentiality prong of the agreement, then it should affirm both the May 14th order and to the extent it gets to it, the February 9th order. Moreover, if it goes to the substance of the application of the test, both the timeframe, five years, is reasonable. It's not been objected to by appellants. And the territory is not unreasonable. And again, it should uphold the trial court. So in conclusion, I would ask that this court dismiss those portions of the appeal for which it does not have proper jurisdiction, which is specifically issues related to the territory and its reasonableness. And additionally, I would ask the court affirm both the February 9th and the May 14th orders. Thank you, counsel. Rebuttal, please. Counsel, I'd like to hear you address the jurisdictional question that opposing counsel has raised. Thank you, Your Honor. With respect to 307A, we did seek an interlocutory appeal in this case. And under 307A, there are five manners in which we can become before Your Honors on an interlocutory appeal involving a temporary injunction. One is if the injunction is denied. One is if it is modified or granted. Or specifically, the statute provides that we that is before the trial court. Here, I do believe this case is very different than the Trophy Time case or the Panduit case. I would state to Your Honors that my reply brief really was devoted to that issue because those cases are factually very different than here. The Trophy Time case, the injunction was denied. I would suggest that after that 30-day period, there wasn't anything left. Nobody could seek anything to the appellate level. And that's actually what the Trophy Time court said. The parties in that case filed a motion with the trial court after that 30-day period, and there was nothing to resurrect because the motion had been denied. In the Trophy Time case, those parties should have sought interlocutory appeal on the denial. In the Panduit case, the reason the appellate court cited the party there on the jurisdictional issue is because the notice of appeal was defective. I was very cautious in the drafting of the notice of appeal for Mr. Ramp to make everyone aware that we were seeking review of the underlying injunction and the decision that was made, and also seeking review of the motion to dissolve that was denied. And I guess I'm left a little puzzled at how this court can examine the denial of the motion to dissolve the animal in which was granted on February 9th. I think they go together. I think that we met the time requirements before 30 days ran in the trial court. Before that granting of the injunction was converted in some way to a final determination, we filed a motion to dissolve the injunction, which we're allowed to do under Section 11-102. And this was not a TRO under 101. It was a motion for preliminary injunction under 11-102. I don't have that statutory provision with me, but I do believe that it gives us actually the right, as a matter of right, to seek to dissolve the injunction at the trial court. We sought to do that within the 30-day period. That was then set for hearing on May 14th. A decision was made to stand by that original injunction and not dissolve it, and then we sought a timely appeal, and counsel has acknowledged that that appeal was timely. So I would assert to your honors that you do have jurisdiction of the two matters that are set forth in my notice of appeal. Very briefly, to talk about a couple of issues raised by counsel in his comments. He mentioned that I didn't raise that this agreement was drafted by Mr. Reeves. It clearly was, and at the May 14th hearing, and I had the particular page cite, I did reference to his honor, Judge Drzeski, that this agreement actually was drafted by Mr. Reeves, and that Mr. Reeves has to rise and fall by his own drafting. That's at page 9 of the transcript on the May 14th hearing. But I think more importantly, counsel mentions, you know, they both have to live by this agreement. My client has to live by the definition of confidential information that he signed up for. But Mr. Reeves... Did you argue the territorial restriction test at the trial level? You know, we talked about the time and territory, your honor, but I really didn't argue in favor of it because I don't think it has any application in an instance where there is only a confidential nondisclosure agreement. I think we don't even have to get to the time and territory or the legitimate business interest test because we can resolve this on the principles articulated in Springfield Coin and OfficeMate regarding what is confidential. I think if the information that Mr. Reeves is seeking to protect is out in the public domain, then my client's free to use it. I think if there is information that is specifically protected, like a formula or a solution, then my client, by virtue of this agreement, is bound not to use that. And then maybe there is a time and territory argument that I would make. But the manner in which this came before the trial court was the plaintiff seeking to protect a customer list, customer identity factors like soil, what he plants, and in particular a vendor agreement. Counsel, you're out of time. All right. Thank you for your time. Thank you. The case is submitted. Court stands in recess.